NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-3192

LOUIS J. GIGLIOTTI,

Appellant

v.

P.W. CAMPBELL CONTRACTING CO.

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 02-CV-1713
District Judge: The Honorable Terrence F. McVerry

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 1, 2005

Before: NYGAARD*, SMITH, and FISHER, *Circuit Judges*

(Filed: July 15, 2005)

OPINION OF THE COURT

SMITH, *Circuit Judge*.

Louis J. Gigliotti appeals from the judgment of the District Court granting P.W.

Campbell Contracting Company's motion for summary judgment on his claims that he

_____ * Honorable Richard L. Nygaard assumed senior status on July 9, 2005

was discharged in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623, and the Americans with Disability Act of 1990 ("ADA"), 42 U.S.C. § 12112.  The District Court had jurisdiction under 28 U.S.C. § 1331.  Appellate jurisdiction exists pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a grant of summary judgment in an employment discrimination appeal.  *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 166 (3d Cir. 2001).

Gigliotti was hired in August 1999, at age 59, as a project manager for P.W. Campbell.  He worked steadily until he had knee surgery in November 2001.  Although P.W. Campbell's management knew he was to have additional knee surgery in 2002, James G. Caliendo, an executive vice-president and chief operating officer, contacted Gigliotti and encouraged him to return to work.  Gigliotti complied with the request on a part-time basis in mid-December 2001.  Caliendo furloughed Gigliotti, and four other employees, on January 7, 2002 as part of a restructuring program developed to combat a "long-term erosion of expected profits."

At the time of his furlough, Gigliotti was handling a single construction project.  That project was taken over by James Gerdun, vice-president of operations.  Gerdun discovered several problems with the project, including overbilling, "numerous, unrecorded, unprocessed and unprojected subcontractor change orders" causing a loss of $35,000, and communication problems with the customer.  Thereafter, Gigliotti asked Caliendo for a reference letter to provide a prospective employer.  In a letter dated

February 22, 2002, P.W. Campbell's controller and HR administrator rejected the request, explaining that the company's policy was to provide confirmation of only the dates of a former employee's employment. The letter further stated

> Since your termination from P.W. Campbell, we have learned of several negative and costly incidents that occurred during the time you were employed, on projects where you were assigned as Project Manager. In light of your unsatisfactory performance on these projects that has just come to our attention, we are unwilling to provide you with a favorable reference or offer you employment at P.W. Campbell if the opportunity arises.

Thereafter, Gigliotti filed a complaint in October 2002 alleging that P.W. Campbell's conduct was a violation of the ADEA and ADA. In resolving P.W. Campbell's summary judgment motion, the District Court concluded that Gigliotti had adduced a prima facie case under both the ADEA and the ADA, and that P.W. Campbell had proffered a legitimate non-discriminatory reason for Gigliotti's initial furlough and the subsequent decision, as set forth in the February 22 letter, not to rehire him. The District Court noted that Gigliotti tried to cast doubt on P.W. Campbell's proffered explanations on three fronts. First, Gigliotti challenged his employer's contention that the company was not profitable. Second, Gigliotti argued that certain remarks uttered by company officials indicated a bias against his age and his physical abilities, and that such remarks were consistent with the company's policy of retaining and hiring younger workers. Finally, Gigliotti asserted that the reason for not rehiring him was a post hoc fabrication and that the company had previously considered his work satisfactory.

The District Court was not persuaded. It concluded that the evidence showed that

the company, in fact, had problems with its profitability.  The company's owers, John and James Campbell, had not received either all or any deferred compensation during calendar years 2000, 2001 and 2002, as they had routinely received in the past.  The Court acknowledged that there were some stray remarks reflective of Gigliotti's age and limited mobility, but that those statements were not uttered by the decisionmaker and did not indicate bias.  Gigliotti's contention that the company had a history of retaining and hiring younger workers was insufficient to cast doubt on the company's reason for placing Gigliotti on furlough.  The Court reasoned that it was undisputed that Gigliotti and another project manager were furloughed because they were each administering a single project, in contrast to the multiple projects handled by the other three project managers.  While some younger employees were hired thereafter, none of the younger hires were employed as project managers.  Although the reason for not rehiring Gigliotti was articulated after his furlough and his work had been deemed acceptable before, the Court reasoned that the "full magnitude" of the performance problems had not been apparent until Gigliotti's project was taken over by Gerdun.  Thus, Gigliotti's argument was simply that the company had made the wrong decision.  Whether the decision was wise or prudent, as the District Court pointed out, was not enough under *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994), to defeat a summary judgment motion.

After carefully reviewing the record, we agree with the District Court's thoughtful analysis.  Accordingly, we will affirm the judgment of the District Court for P.W.

Contracting Company.